UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WILLIAM SOLANO,                                    CASE NO.

      Plaintiff,

vs.

CALERES, INC.,
DBA Sam Edelman
a Foreign for-profit Corporation

      Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, WILLIAM SOLANO, through undersigned counsel, sues Defendant, CALERES,

INC., a Foreign for-profit Corporation that owns the Sam Edelman brand (hereinafter referred to

as "Sam Edelman"), for declaratory and injunctive relief, and damages, and alleges as follows:

1)      This action is brought under Title III of the Americans With Disabilities Act ("ADA"), that

is codified in 42 U.S.C. §§12181-12189.

2)      This action is also brought pursuant to 28 C.F.R. Part 36.

3)      This Court has jurisdiction over this case based on federal question jurisdiction, as provided

in 28 U.S.C. §1331 and the provisions of the ADA.

4)      Furthermore, because this Court has jurisdiction over the ADA claim, the Court has

supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5)      Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act

of 2008, 42 U.S.C. §12101 ("ADAAA").

6)      Defendant, Sam Edelman is a foreign corporation authorized to do business and doing business in the State of Florida.

7)      Defendant, Sam Edelman owns and operates retail stores that sell shoes for women and kids, women's clothing, sunglasses, and accessories.  There are retail locations in Miami-Dade County.

8)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase Khloe slip-on espadrilles, girl's Bella Aqua sneaker, and Pilot sunglasses.

10)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13)      Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14)      Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15)      At all relevant times, Plaintiff is and was visually impaired and permanent, incurable Rhegmatogenous Retinal Detachment in his left eye and debilitating Glaucoma in his right eye.

16)      Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class

under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17)     Plaintiff regularly uses the computer, but he needs the assistance of special software for visually impaired persons.  The software that he uses is screen reader software that is readily available commercially.

18)     Defendant is a private entity which owns and operates retail locations.  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19)     Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores.  The public is able to locate the Defendant's retail stores and allows consumers to purchase shoes for women and kids, women's clothing, sunglasses, accessories, and gift cards on defendant's website, view items available at defendant's stores, create an online account, and sign up for email updates on Defendant's latest product launches, events and exclusive offers.

20)     Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA.  The website cannot discriminate against individuals with disabilities.

21)     Plaintiff is a customer of Defendant who is and was interested in purchasing Khloe slip-on espadrilles, girl's Bella Aqua sneaker, and Pilot sunglasses through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22)     Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to his home is important to his as an alternative when he is not able to visit the Defendant's stores.

23)     The Website also services Defendant's physical stores by providing information on its brand of merchandise, its collections, sales campaigns, and other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to locate Defendant's physical stores and retail locations, sells merchandise offered for sale by Defendant from its physical stores, allows consumers to purchase gift cards, create an online account, and allows visitors to sign up for an email account to receive updates on Defendant's latest product launches, events and exclusive offers, the website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25)     Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, allows the customers to sign up for an electronic account, and allows visitors to sign up for an email account to receive updates on Defendant's latest product launches, events and exclusive offers, the Website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the Website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full and equal

enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26)     At all times material hereto, Defendant was and still is an organization owning and operating the Website.  Since the Website is open through the internet to the public as an extension of the retail stores, by this nexus the Website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated Website it created and maintains to the requirements of the ADA.

27)     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's email program and make purchases both online through the Website and at Defendant's physical stores.

28)     The opportunity to shop Defendant's merchandise and secure information from his home for eventual use in Defendant's physical stores are important accommodations for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience.  Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29)     Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices, sales, discounts, and rewards programs. Plaintiff may look at several dozens of sites to compare features and prices.

30)     During the month of December 2019, Plaintiff attempted on several occasions to utilize the Website to browse through the merchandise and on-line offers to educate himself as to the

merchandise, sales, discounts, and promotions being offered, and with the intent to make a purchase through the Website or at one of Defendant's physical stores.

31)     Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32)    Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33)    Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase the merchandise on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34)    A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to locating the Defendant's retail stores, purchasing shoes for women and kids, women's clothing, sunglasses, accessories, and gift cards on defendant's website, viewing items available at defendant's stores, creating an online account, and signing up for email updates on Defendant's latest product launches, events and exclusive offers.

35)     A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36)     The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37)     Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

Violation: Focusable components do not receive focus in an order that preserves meaning and operability.

Notes/Proof: Added to Cart / View Your Cart pop up modal does not receive focus and is not easily accessible when navigating with the keyboard sequentially. Using tab after adding item to cart takes focus someplace unexpected – 'You May Also Like', 'Edelman Icons', and Page Footer.

Applicable WCAG 2.0 Standard at Issue: *Standard 2.4.3 Focus Order (Level A).*

Nature of the Violation: required by WCAG 2.0's *Standard 2.4.3 Focus Order.*

Violation: Labels or instructions are not provided when content requires user input.

Note/Proof: Does not indicate in an audible format that by subscribing to newsletters the user can 'ENJOY 10% OFF PLUS FREE SHIPPING ON YOUR NEXT PURCHASE'.  Does not indicate in an understandable audible format the color and size input fields.

Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.0's *Standard 3.3.2 Labels or Instructions.*

Violation: When an input error is automatically detected, the item that is in error is not described to the user in text.

Note/Proof: Does not indicate in an audible format existing error when trying to add to cart with no color or size selected.

Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.1 Error Identification (Level A).*

<u>Nature of the Violation</u>: required by WCAG 2.0's *Standard 3.3.1 Error Identification.*

Violation: When an input error that does not jeopardize the security or purpose of the content is automatically detected and suggestions for correction are known, these suggestions are not provided to the user.

<u>Note/Proof</u>: Does not indicate in an audible format existing error when trying to add to cart with no color or size selected.

<u>Applicable WCAG 2.0 Standard at Issue</u>: *Standard 3.3.3 Error Suggestion (Level AA).*

<u>Nature of the Violation</u>: required by WCAG 2.0's *Standard 3.3.3 Error Suggestion.*

38) Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who he can contact for assistance, questions, or concerns.

39) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40) On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44)     Plaintiff has retained the undersigned attorneys to represent his in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

45)     Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46)     Defendant owns and operates the www.samedelman.com website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47)     Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired.  Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48)     Defendant's website is not in compliance with the ADA.

49)     Defendant has made no reasonable accommodation for Plaintiff's disability.

50)     A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

**Violation**: A mechanism is not available to bypass blocks of content that are repeated on multiple Web pages.

Note/Proof: No option is provided to skip navigation and access the page's content.

Applicable WCAG 2.0 Standard at Issue: Standard 2.4.1 Bypass Blocks (Level A).

Nature of the Violation: required by WCAG 2.0's Standard 2.4.1 Bypass Blocks.

51)     Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since he has been denied full access to Defendant's website.

52)     As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.  A declaration that Defendant's website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E. An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.   An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.  An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.  An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.   An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

Such other and further relief as the Court deems just and equitable.



[1]

## COUNT II – TRESPASS

53)     Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

56)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

57)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

58)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Terms and Conditions", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

Types Of Information We Collect

*The following provides examples of the type of information that we collect from you and how we use that information.*

| Context | Types of Data, Purpose for Collection, and Use of Data |
|---|---|
| *Account Registration* | *We collect your name and contact information when you create an account. Accounts can be used for easy checkout and to save your preferences and transaction history.* |
| *Email Interconnectivity* | *If you receive email from us, we use certain tools to capture data related to when you open our message, click on any links or banners it contains and make purchases.* |
| *Employment* | *If you apply for a job posting, or become an employee, we collect information necessary to process your application or to retain you as an employee. This may include, among other things, your Social Security Number. Providing this information is required for employment.* |
| *Feedback/Support* | *If you provide us feedback or contact us for support we will collect your name and e-mail address, as well as any other content that you send to us, in order to reply.* |
| *Mailing List* | *When you sign up for one of our mailing lists we collect your email address or postal address.* |
| *Order Placement* | *We collect your name, billing address, shipping address, e-mail address, phone number, and credit card number when you place an order for fulfillment and troubleshooting.* |

| Partner Promotion | We collect information that you provide as part of a co-branded promotion with another company. |
|---|---|
| Surveys and Contests | When you participate in a survey or contest we collect information that you provide through that process. We use survey information to improve our services, and contest information for announcing winners. If the survey or contest is provided by a third party, the third party's privacy policy applies to the collection, use, and disclosure of your information. |
| Third Party Tracking | We participate in behavior-based advertising. This means that a third party uses technology (e.g., a cookie) to collect information about your use of our website so that they can provide advertising about products and services tailored to your interests. That advertising may appear either on our websites, or on other websites. You can opt-out of receiving advertising based upon your browsing behavior from some network advertising companies by going to the _Network Advertising Initiative_ and the _Digital Advertising Alliance_ websites, although to completely prevent advertising based upon your browsing behavior you should also disable the cookies on your browser. |
| Web logs | We collect information, including your browser type, operating system, Internet Protocol (IP) address (a number that is automatically assigned to a computer when the Internet is used), domain name, click-activity, referring website, and/or a date/time stamp for visitors. |

| | |
|---|---|
| *Cookies and first party tracking* | *We use cookies and clear GIFs. "Cookies" are small pieces of information that a website sends to a computer's hard drive while a web site is viewed. We may use both session cookies (which expire once a web browser is closed) and persistent cookies (which stay on a device until deleted). Among other things, cookies allow us to provide a more personal and interactive experience and to improve our marketing efforts. Persistent cookies may be removed by following instructions provided by your browser. If you choose to disable cookies some areas or features of our websites may not work properly. We do not store personal information in the cookie.* |

*In addition to the information that we collect from you directly, we may also receive information about you from other sources, including third parties, business partners, our affiliates, or publicly available sources. For example, if you submit a job application, or become an employee, we may conduct a background check.*

Use And Processing Of Information

*In addition to the purposes and uses described above, we use information in the following ways:*

- *To identify you when you visit our websites or our stores.*

- *To provide products and services or to process returns.*

- *To improve our services and product offerings.*

- *To streamline the checkout process.*

- *To conduct analytics.*

- *To respond to inquiries related to support, employment opportunities, or other requests.*

- *To send marketing and promotional materials, including information relating to our products, services, sales, or promotions.*

- *For internal administrative purposes, as well as to manage our relationships.*

*As discussed in the sections above, our collection and processing of your information is based in different contexts upon your consent, our need to perform a contract, our obligations under law, and/or our legitimate interest in conducting our business.*

Sharing Of Information

*In addition to the specific situations discussed elsewhere in this policy, we disclose information in the following situations:*

1. **Affiliates and Acquisitions.**

   *We may share information with our corporate affiliates (e.g., parent company, sister companies, subsidiaries, joint ventures, or other companies under common control). If another company acquires our company, business, or our assets, we will also share information with that company.*

2. **Other Disclosures with Your Consent.**

   *We may ask if you would like us to share your information with other unaffiliated third parties who are not described elsewhere in this policy.*

3. **Other Disclosures without Your Consent.**

   *We may disclose information in response to subpoenas, warrants, or court orders, or in connection with any legal process, or to comply with relevant laws. We may also share your information in order to establish or exercise our rights, to defend against a legal claim, to investigate, prevent, or take action regarding possible illegal activities,*

*suspected fraud, safety of person or property, or a violation of our policies, or to comply with your request for the shipment of products to or the provision of services by a third party intermediary.*

4. ***Public.***

*You may have the opportunity to post comments, or reviews, in a public forum. If you decide to submit information on these pages, that information may be publically available.*

5. ***Partner Promotion.***

*We may offer contests, sweepstakes, or other promotions with third party partners. If you decide to enter a contest, sweepstakes, or promotion that is sponsored by a third party partner the information that you provide will be shared with us and with them. Their use of your information is not governed by this privacy policy.*

6. ***Service Providers.***

*We may share your information with service providers. Among other things service providers may help us to administer our website, conduct surveys, provide technical support, process payments, and assist in the fulfillment of orders.*

Your Choices

*You can make the following choices regarding your personal information:*

1. ***Promotional Emails.***

*You may choose to provide us with your email address for the purpose of allowing us to send newsletters, surveys, offers, and other promotional materials to you, as well as targeted offers from third parties. You can stop receiving promotional emails by*

*following the unsubscribe instructions in e-mails that you receive or by clicking here. If you decide not to receive promotional emails, we may still send you service related communications.*

2. ***Promotional Mailings.***

    *If at any time you do not want to receive promotional mailings from us you can remove yourself from our mailing lists by emailing us at (Email Customer Service) with "NO MAILINGS" in the subject line along with your name, address and zip code. Please note that our mailings are prepared in advance of their being sent. Although we will remove your name from our mailing list after receiving your request, you may still receive mailings from us that had been initiated prior to your name being removed.*

3. ***Changes To Your Personal Information.***

    *We rely on you to update and correct your personal information. Our website allows you to modify or delete your account profile. You can make changes to other information by contacting us at the information below or by clicking here. Note that we may keep historical information in our backup files as permitted by law. If our website does not permit you to update or correct certain information contact us at the address described below.*

4. ***Deletion Of Your Personal Information.***

    *Typically we retain your personal information for the period necessary to fulfill the purposes outlined in this policy, unless a longer retention period is required or permitted by law. You may, however, request information about how long we keep a specific type of information, or request that we delete your personal information by contacting us at the contact information below or by clicking here. In addition, we may keep your personal*

*information as needed to comply with our legal obligations, resolve disputes, and/or enforce any of our agreements.*

5. ***Revocation of Consent.***

   *If you revoke your consent for the processing of personal information then we may no longer be able to provide you services. In some cases, we may limit or deny your request to revoke consent if the law permits or requires us to do so, or if we are unable to adequately verify your identity. You may revoke consent to processing (where such processing is based upon consent) by contacting us at the contact information below.*

6. ***Access To Your Personal Information.***

   *If required by law, upon request, we will grant you with reasonable access to the personal information that have about you. You may request access to your personal information by contacting us at the contact information below.*

7. ***Online Tracking.***

   *We do not currently recognize automated browser signals regarding tracking mechanisms, which may include "Do Not Track" instructions.*

8. ***California Residents.***

   *California residents may be entitled to ask us for a notice describing what categories of personal information (if any) we share with third parties or affiliates for direct marketing. If you are a California resident and would like a copy of such notice, please submit a written request to us using the information in the "Contact Information" section below.*

9. ***Nevada Residents***

   *Nevada law allows Nevada residents to opt-out of the sale of certain types of personal*

*information. We do not currently sell personal information as defined in the Nevada law.*

*However, if you are a Nevada resident, you still may submit a verified request to opt-out*

*of sales and we will record your instructions and incorporate them in the future if our*

*policy changes. Opt-out requests may be sent to: Customer Service.*

How We Protect Personal Information

*No method of transmission over the Internet, or method of electronic storage, is fully secure. While we use reasonable efforts to protect your personal information from unauthorized access, use, or disclosure, we cannot guarantee the security of your personal information. In the event that we are required by law to inform you of any unauthorized access to your personal information we may notify you electronically, in writing, or by telephone, if permitted to do so by law.*
*Our website permits you to create an account. When you do you will be prompted to create a password. You are responsible for maintaining the confidentiality of your password, and you are responsible for any access to or use of your account by someone else that has obtained your password, whether or not such access or use has been authorized by you. You should notify us of any unauthorized use of your password or account.*

Miscellaneous

*The following additional information relates to our privacy practices:*

- ***Transmission Of Information To Other Countries.***

  *Your information may be processed in a foreign country where privacy laws may be less*

  *stringent than the laws in your country. Nonetheless, where possible we take steps to*

  *treat personal information using the same privacy principles that apply pursuant to the*

  *law of the country in which we first received your information. By submitting your*

  *personal information to us you agree to the transfer, storage and processing of your*

  *information in a country other than your country of residence including, but not*

  *necessarily limited to, the United States. If you would like more information concerning*

  *our attempts to apply the privacy principles applicable in one jurisdiction to data when it*

  *goes to another jurisdiction you can contact us using the contact information below.*

- ***Third Party Applications/Websites.***

  *We have no control over the privacy practices of websites or applications that we do not own.*

- ***Children.***

  *SamEdelman.com is not targeted to children. We will never knowingly request information from anyone under the age of 13 without parental consent.*

- ***Changes To This Privacy Policy.***

  *We may change our privacy policy and practices over time.*

  *Option 1: To the extent that our policy changes in a material way, the policy that was in place at the time that you submitted personal information to us will generally govern that information unless we receive your consent to the new privacy policy. If at any point we decide to use your personal information in a manner different from what was stated at the time it was collected, we will notify you by email. At that time, you will have a choice as to whether we use your information in this different manner.*

  *Option 2: Any material future changes or additions to the processing of personal information as described in this Policy affecting you will be communicated to you through an appropriate channel. For example, we may place a prominent notice on a product site or email you to let you know of an updated Policy.*

  *Option 3: If our information practices change in the future, we will post an updated policy on this Web site. You can tell if the policy has changed by checking the revision date. If we change the policy in a material way, we will provide appropriate notice to you.*

59)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his

computer. Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

60) . Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

**<u>Request for Jury Trial</u>**

61)     Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  305-824-9800
Facsimile:  305-824-3868
Email:  lr1208@live.com
By: _____/s/_____
LYDIA C. QUESADA, ESQ., of Counsel
FL BAR NO.: 191647